Filed 1/29/26  P. v. Perkins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>DARRIAN CLINT PERKINS,<br><br>   Defendant and Appellant. | D084206<br><br><br>(Super. Ct. No. SCD290203) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed in part, remanded in part with instructions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Darrian Clint Perkins of one count of forcible rape (Pen. Code, § 261, subd. (a)(2); count 1), two counts of sodomy by use of force (§ 286(c)(2)(A); counts 2 & 7), two counts of forcible oral copulation (§ 287(c)(2)(A); counts 3 & 8), one count of simple kidnapping (§ 207(a);

count 4), and one count of robbery (§ 211; count 5) as to Jane Doe; and one count of forcible rape (§ 261(a)(2); count 9) as to a separate victim. As to counts 1, 2, 3, 7, 8, and 9, the jury found true that Perkins committed the specified offense against more than one victim (§ 667.61(b), (c) & (e)(4)). As to counts 1, 2, 3, 7, and 8, the jury found true that Perkins inflicted both great bodily injury (§ 667.61(a), (c) & (d)(6)) and torture (§ 667.61(a), (c) & (d)(3)) on Doe. The trial court sentenced Perkins to a five-year determinate prison term and a consecutive indeterminate term of 140 years to life. Perkins raises two arguments on appeal.

First, Perkins claims insufficient evidence supports his conviction for simple kidnapping because no contextual factors render the distance he made Doe travel "'substantial in character.'" (*People v. Martinez* (1999) 20 Cal.4th 225, 237.) *Martinez* is clear, however, that no contextual factors need be found for a jury to convict a defendant of simple kidnapping, and here, the distance alone makes Perkins' movement of Doe substantial. Even were additional factors required, we conclude the jury could reasonably find on this record that the movement of Doe increased Perkins' opportunity to commit further crimes against her and decreased the likelihood of detection of his crimes. Because substantial evidence supports the jury's asportation finding, we affirm the simple kidnapping conviction.

Second, Perkins argues all fines and fees included in the minutes from his sentencing hearing and the abstract of judgment—aside from the $6,768.82 in restitution to Doe, which Perkins does not contest—must be stricken because none were orally imposed during the sentencing. We agree no fines and fees were orally imposed. We thus remand to the trial court to state on the record any fines or fees imposed, their amounts, and their

2

statutory bases; and prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.

We therefore remand with instructions related to the fines and fees but otherwise affirm the judgment.

## I.

We recite only those facts necessary to resolve the two issues on appeal.

## A.

In the early morning hours of May 9, 2021, after the bar Doe and some friends were patronizing closed, Perkins invited Doe, one of her friends, and another person to hang out at his hotel room across the street. After drinking alcohol, smoking marijuana, and listening to music for about an hour, the party broke up.

But according to Doe, when she attempted to leave, Perkins pocketed her cell phone and forcibly stopped her from exiting the room. For the next four hours, Perkins repeatedly physically and sexually assaulted Doe against her will. He threatened to kill her at least three times and told her he had a gun in his car. He choked Doe multiple times. He also took Doe's ID card, credit cards, and cash from her purse.

According to Doe, by around 7:30 a.m., Perkins needed more beer "so he could continue peeing in [Doe's] mouth." Perkins walked Doe out of the hotel room, down the hallway, down the stairs, and into the parking garage to his car—a distance of at least 104 feet. Once they were in the car, Perkins told Doe he had a gun and would kill her if she tried to run. Perkins then drove her to a convenience store "a couple blocks away."

While leaving the hotel and at the convenience store, Doe did not attempt to escape or ask anyone for help because she was scared Perkins would catch her and she was terrified he had a gun. She stood outside the

3

convenience store waiting for Perkins while he finished buying beer and a pair of sunglasses to cover Doe's black eye.

Afterward, the pair drove back to the hotel. They avoided the lobby by walking back up the stairs, and walked down the hallway back to Perkins' hotel room. According to Doe, Perkins continued his brutal physical and sexual assault of her for another three or four hours, "the peeing especially."

By around 11:00 a.m., Perkins was hungry and drove Doe to a restaurant for breakfast. He again told Doe that if she tried to run, he would kill her. While waiting in line at the drive-through, Perkins told Doe the pastries at a café next door were good and gave her money to buy some.

Upon entering the café, Doe told a server she had been "kidnapped" and asked her to call the police. The server called 911. Doe hid in the bathroom. Once law enforcement arrived, Perkins, who was parked near the café, was arrested.

Doe suffered mouth lacerations and four cracked teeth; a nose fracture; a subconjunctival hemorrhage of one eye; significant bruising, including of her eyes, cheeks, neck, ears, lips, hand, shoulder, back, hip, thighs, and knees; swelling of her nose, eyes, ear, hand, and cheeks; rugburn on her knees; cigarette burns on her back; and abrasions to the perianal area. A swab of Doe's neck offered "very strong support" for a match to Perkins' DNA, and a swab from around her mouth indicated some support Perkins could have been a DNA contributor. The non-sperm fraction of a swab of Perkins' penis indicated "very strong support" Doe was a contributor to the DNA mixture.

Perkins testified at trial, claiming his encounter with Doe included consensual rough sex and that she voluntarily went to the convenience store and back to the hotel with him.

4

The jury was shown several cell phone videos Perkins took of his and Doe's interactions over the course of their encounter.  The jury was also shown surveillance camera footage from the hotel and the convenience store.  Ultimately, the jury convicted Perkins of all the charged counts except count 6 (forcible rape), which was dismissed before the jury deliberated.

B.

The trial court sentenced Perkins to a total prison term of five years plus 140 years to life.  The court sentenced Perkins to the five-year middle term for simple kidnapping (count 4) and the three-year middle term for robbery (count 5) and ran them concurrent.  The court imposed consecutive sentences of 25 years to life for each count of forcible rape (count 1), sodomy by use of force (counts 2 & 7), and forcible oral copulation (counts 3 & 8) of Doe and a consecutive sentence of 15 years to life for forcible rape (count 9) of the other, separate victim.

After assessing whether to run the terms concurrent or consecutive, the court stated it "is essentially agreeing with the recommendation of the probation department, although [it is] running the two determinant terms concurrent."

The court did not mention fines or fees.  It did, however, ask Perkins' counsel if Perkins "agree[d] to the restitution related to Jane Doe's victim's compensation reimbursement," and counsel said, "Yes."

Though fees and fines were not orally pronounced, the minutes from the sentencing hearing indicate imposition of a $41 theft fine (§ 1202.5), a $320 court operations assessment (§ 1465.8), a $240 criminal conviction assessment (Gov. Code, § 70373), a $300 sex offender registration fee (Pen. Code, § 290.3), a $1,500 reimbursement to the hospital that collected DNA samples from Perkins, a $10,000 restitution fine (§ 1202.4), and a

$10,000 probation revocation fine (§§ 1202.44 & 1202.45).  The abstract of judgment includes all these items except the $1,500 to the hospital.

## II.

### A.

Perkins claims insufficient evidence supports his simple kidnapping conviction.  Simple kidnapping requires (1) unlawful movement of a person by use of force or fear (2) without the person's consent (3) for a substantial distance.  (*People v. Jones* (2003) 108 Cal.App.4th 455, 462; see also Pen. Code, § 207(a).)  Perkins challenges the sufficiency of the evidence underlying the third element, which is known as asportation.[1]  (*People v. Arias* (2011) 193 Cal.App.4th 1428, 1434.)  On this record, we conclude the asportation evidence is sufficient to support Perkins' conviction.

"In considering a sufficiency of the evidence claim, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Collins* (2025) 17 Cal.5th 293, 307 [cleaned up].)  We do not reweigh the evidence, assess witness credibility, or choose between competing inferences.  (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)

Previously, the asportation element was "exclusively dependent on the distance involved."  (*Martinez*, 20 Cal.4th at p. 233.)  *Martinez* changed this.  Now, a factfinder "should consider the totality of the circumstances" to

---

[1]  Perkins states but does not support with legal argument or citations to authority that "Doe consensually went with [him] to the store."  To the extent this statement was intended to raise a challenge to any other element of kidnapping, we deem the argument forfeited.  (*People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485, 522.)

6

determine whether the "'scope and nature'" of the movement was "'substantial in character.'" (*Id.* at pp. 237, 236, 235.) Accordingly, "the jury *might properly consider* not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Id.* at p. 237, italics added.) Yet, "[w]hile the jury *may consider* a victim's increased risk of harm, it may convict of simple kidnapping *without finding an increase in harm[] or any other contextual factors*." (*Ibid.*, italics added.) Thus, for simple kidnapping, "*as before*, the jury need only find that the victim was moved a distance that was 'substantial in character.'" (*Ibid.*, italics added.)

Perkins claims "[t]he prosecution failed to establish at trial that Doe's movement was 'substantial in character'" because "the record does not support a finding beyond a reasonable doubt that the movement of Doe increased any risk of harm to her or that the movement decreased the possibility authorities would have detected Perkins." (Emphasis omitted.) The People argue the distance itself was sufficiently substantial and the jury was not required to make any findings other contextual factors were present. Alternatively, the People claim the trip to and from the convenience store enhanced Perkins' ability to avoid detection and increased his opportunity to commit additional crimes against Doe. We agree with the People.

While a jury "*should* consider the totality of the circumstances," *Martinez* is clear that a finding of neither increased risk of harm nor any other contextual factor is required for a jury to convict a defendant of simple kidnapping. (*Martinez*, 20 Cal.4th at p. 237, italics added.) From that

7

holding it follows that the distance traveled can alone make the movement "'substantial in character.'" (*Ibid.*)  Here, Perkins drove Doe multiple blocks and made her walk at least 208 feet round trip.  Perkins admits in reply "that if distance alone were now the proper test to apply, there would have been sufficient evidence at trial to sustain a simple kidnapping conviction."  We agree this is substantial evidence from which a jury could reasonably conclude beyond a reasonable doubt that Perkins' movement of Doe was "'substantial in character'" regardless of whether other contextual factors existed.  (*Martinez*, at p. 237.)

But even were distance insufficient alone to establish asportation, we disagree with Perkins' premise that on this record the jury could not reasonably conclude any contextual factors apply and, if anything, "the time Perkins and Doe were driving to and from the [convenience store] would have only increased the potential that Perkins would have been detected by law enforcement."  Forcing Doe to accompany him to the convenience store and threatening to kill her if she attempted to escape was a way Perkins could minimize the risk of detection by law enforcement.  A rational jury could conclude that, had Perkins left Doe in his hotel room, she would have escaped and contacted law enforcement.  Thus, by keeping Doe with him, Perkins decreased the likelihood law enforcement would detect his crimes.

In this way, Perkins' movement of Doe also increased his opportunity to commit further crimes against her.  Upon returning to the hotel room, Doe testified she endured another three to four hours of sexual and physical assaults by Perkins that included him frequently urinating on her.  For the reasons noted above, these offenses likely would not have occurred had Perkins opted to leave Doe in the hotel room unattended while he went to buy more beer.

8

The facts here are distinguishable from the cases on which Perkins relies, which we accordingly find unpersuasive. In *People v. Perkins* (2016) 5 Cal.App.5th 454, the defendant moved the victim 10 to 30 feet within an apartment, and in *People v. Ellis* (2025) 108 Cal.App.5th 590, the defendant moved the victim 10 feet from a public sidewalk into the street. Perkins, meanwhile, transported Doe over 208 feet and multiple blocks in two distinct movements—from the hotel to the convenience store, and then from the convenience store back to the hotel—the second of which took Doe from a public place to a private space.

Accordingly, on this record, a jury could have reasonably concluded beyond a reasonable doubt that Perkins, by forcing Doe to accompany him on his trip to the convenience store, moved Doe a substantial distance in a manner that both decreased the likelihood his crimes would be detected and increased his opportunity to commit further crimes against Doe. We thus conclude substantial evidence supports the simple kidnapping conviction.

B.

Perkins claims the trial court failed to orally impose any fines or fees at his sentencing hearing, so the fines and fees imposed in the abstract of judgment should be stricken. The People counter that the court "incorporated by reference details found in the probation report" when it "referr[ed] to the probation report," "indicat[ing] its intention to impose the[ fines and fees contained therein] and their amounts." The People also urge us to order the abstract of judgment amended to include the $1,500 in restitution to the hospital recommended in the probation report and noted in the sentencing minutes. We agree with Perkins that no fines or fees were orally imposed.

9

The judgment against a defendant in a felony case must be pronounced by the court with the defendant, or an attorney for the defendant, present. (§§ 1191, 1193.)  Fines and fees, as part of the judgment, must be orally pronounced and cannot be "simply added to the judgment later outside defendant's presence." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 388-389.)  Where there is a discrepancy between the oral pronouncement and the abstract of judgment, the oral pronouncement controls.  (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)

Here, the court said nothing about fines or fees during Perkins' sentencing hearing.  The People claim the court incorporated by reference the probation department's recommended fines and fees when it stated, "For that reason, the Court is essentially agreeing with the recommendation of the probation department, although I am running the two determinant terms concurrent."  But the People read too much into this statement.  The court made this statement after addressing whether to run the sentences on the sexual assault counts consecutive or concurrent.  Noting the many opportunities Perkins had to reconsider his violent actions, the court concluded the counts were "separate occasions of sexual assault."  It was in that context that the court indicated it was agreeing with the probation report.  And because the court gave no indication how it was inclined to rule on fines and fees, we conclude there is a reasonable probability a result more favorable to Perkins may have been reached absent the court's error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

Accordingly, the fines and fees the sentencing minutes and abstract of judgment indicate were imposed but which were not orally pronounced cannot stand.  (*Zackery*, 147 Cal.App.4th at p. 388.)  Yet some of the fees the court failed to impose were mandatory (see, e.g., *People v. Woods* (2010)

10

191 Cal.App.4th 269, 272), and it is unclear on the record before us whether the court intended to impose any discretionary fines and fees. We thus remand for the trial court to clarify which fines and fees it intends to impose and in what amounts, including any restitution to the hospital. (*Zackery*, at p. 389.)

III.

We remand to the trial court to (1) orally pronounce the fines and fees it intends to impose; (2) amend the May 17, 2024 Felony Minutes—Pronouncement of Judgment to indicate which fines or fees, if any, it orally pronounced and imposed (this does not affect the uncontested $6,768.82 in restitution to Doe); and (3) prepare an amended Felony Abstract of Judgment—Determinate and forward a certified copy of the same to the Department of Corrections and Rehabilitation. In all other respects, we affirm.

CASTILLO, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.

11